UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HONORE L. CLINTON,

                Petitioner,

-vs-                                     Case No.  8:05-cv-1940-T-17EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS,

                Respondent.

_____

## **ORDER**

    This cause is before the Court on Petitioner Honore L. Clinton's 28 U.S.C. § 2254 petition for writ of habeas corpus.  Clinton challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County, Florida.

Background

    On March 15, 1999, Clinton was charged by information with one count of robbery involving the use of a mask, in violation of Florida Statutes 775.045 and 812.139209c0. (Vol. 1: R (1-5).[1]  Clinton proceeded to a jury trial on June 6, 2000, before the Honorable John A. Schaefer, Circuit Judge. Clinton was represented by Assistant Public Defender James Armington. The jury found Clinton guilty of robbery with a mask as charged. (Vol. 1: R 65). On June 7, 2000, the state trial court sentenced Clinton as a prison releasee reoffender to thirty years incarceration. (Vol. 1: R 68-72).

---

[1] Respondent filed the five-volume record (three original and two supplemental) on direct appeal as Respondent's Exhibit 19. The documents in the record are found in volume I, and are referred to by the symbol "R" followed by the appropriate page number located in the lower right hand corner of the page. The trial transcript appears in volumes II and III, and is referred to by volume number, followed by "T" and the page number located in the upper right hand corner of the page. The jury voir dire is contained in volumes IV and V, and is referred to by the clerk's record page numbers located in the lower right hand corner.

Clinton appealed the conviction and sentence. Brad Permar, the Assistant Public Defender appointed to represent Clinton on appeal, filed an initial brief (Exhibit 1) raising three issues:

Issue I:     JUDGE SCHAEFER GAVE A MISLEADING AND HIGHLY INACCURATE JURY INSTRUCTION.

Issue II:    JUDGE SCHAEFER ERRED IN RESTRICTING DEFENSE CROSS-EXAMINATION ON A FACTOR HIGHLY RELEVANT TO A JURY ASSESSMENT OF WITNESS CREDIBILITY.

Issue III:   JUDGE SCHAEFER ERRED IN GRANTING A STATE PEREMPTORY CHALLENGE, FIRST BY APPLYING AN IMPROPER STANDARD, AND SECOND BY "DISENFRANCHISING" THE JUROR BASED ON UNPROVEN ALLEGATIONS.

On May 25, 2001, in appellate case no. 2D00-2692, the state district court of appeal per curiam affirmed Clinton's judgment and sentence. (Exhibit 3). *Clinton v. State*, 790 So. 2d 413 (Fla. 2d DCA 2001)[Table].

On October 8, 2001, Clinton filed a pro se motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 5). On December 5, 2002, Clinton filed a notice of inquiry regarding the rule 3.850 motion. (Exhibit 6). On February 4, 2003, the trial court rendered a written order dismissing the motion without prejudice for failure to provide the proper oath. (Exhibit 7). Clinton did not appeal that ruling.

On May 23, 2003, Clinton filed a pro se amended motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. (Exhibit 8). Clinton raised six claims, the first five of which alleged ineffective assistance of counsel, claiming trial counsel was ineffective for: (1) failing to call alibi witnesses; (2) failing to properly impeach prosecution witnesses; (3) failing to object to reclassification of the instant offense because a mask was used in its commission; (4) presenting an improper motion for judgment of acquittal; (5) failing

2

to object to an improper member of the jury; and (6) newly discovered evidence.

On March 19, 2004, the state trial court denied the rule 3.850 motion in part and ordered the State to show cause in part. (Exhibit 9). The court summarily denied grounds 1, 2, 3, and 4, and directed the State to show cause why grounds 5 and 6 should not proceed to an evidentiary hearing. On April 19, 2004, the State filed its response, conceding that an evidentiary hearing was appropriate on ground 5, but arguing that the newly discovered evidence claim in ground 6 should be denied without a hearing. (Exhibit 10).

On May 11, 2004, the state postconviction court filed an order denying ground 6, but granting an evidentiary hearing as to ground 5. (Exhibit 11). An evidentiary hearing was held before the Honorable Philip J. Federico, Circuit Judge, on December 6, 2004. (Exhibit 12). Petitioner Clinton appeared pro se.[2]  The court heard testimony from Clinton as well as trial counsel, James Armington. At the close of the hearing, the state trial court orally announced that it was denying the rule 3.850 motion.

Thereafter, on December 13, 2004, the court issued its final written order denying rule 3.850 relief. (Exhibit 14). Clinton appealed the adverse rulings. He filed a pro se initial brief raising essentially the same six claims raised in his motion for postconviction relief. (Exhibit 15). The State filed an answer brief on or about May 12, 2005. (Exhibit 16). On August 12, 2005, in Case No. 2D05-303, the state district court of appeal per curiam affirmed the state trial court's denial of postconviction relief. (Exhibit 17). *Clinton v. State*, 2005 Fla. App. LEXIS 12597 (Fla. 2d DCA 2005)[Table]. The mandate issued on September 9, 2005. (Exhibit 18).

---

[2] On June 9, 2004, the court held a hearing on Clinton's request to appoint counsel. (Exhibit 13). The court denied the request, finding that the issue to be resolved concerned a simple factual determination regarding trial counsel's reasons for not exercising a peremptory challenge or challenge for cause on one prospective juror.

Clinton signed the present federal petition and submitted the document to prison authorities on October 11, 2005, raising three grounds for relief: (1) Deprivation of right to due process by conviction based on the state court's restriction of defense cross-examination of a key State witness on matters bearing on the accuracy of his identification; (2) deprivation of right to due process by conviction based on the state court's allowing an improper peremptory challenge by the State and disenfranchising of a juror based on unproven allegations; (3) deprivation of rights as secured by the Sixth and Fourteenth Amendments to the United States Constitution based on ineffective assistance of trial counsel, where counsel failed to strike or attempt to strike venire person Beverly Rozmus from the panel based on her unequivocal response to a question about whether she could remain fair and impartial if the trial was lengthy.

Clinton's petition is untimely and, on the merits of his claims, does not warrant federal habeas relief.

Petition Is Untimely

The present petition is untimely pursuant to 28 U.S.C. §2244(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). According to the AEDPA, a person in custody pursuant to the judgment of a state court has one year from the date his judgment became final to file a § 2254 federal habeas petition. In this case, Clinton's convictions and sentences became final on **August 23, 2001**, ninety (90) days after the state appellate court filed its opinion affirming judgment on May 25, 2001. *See Bond v. Moore*, 309 F.3d 770, 772 (11th Cir. 2002)(one-year limitations period for Florida prisoner's federal habeas petition started to run when time expired for filing petition for certiorari from state high court's denial of discretionary review). *See also Clay v. United States*, 123 S.Ct. 1072, 1076

4

(2003)(The 90 days allowed for filing a petition for writ of certiorari begins on the date the appellate court issues its opinion on the direct appeal, not from the date the appellate court issues its mandate). Therefore, Clinton had until **August 22, 2002** at the latest to file his federal petition, absent any collateral applications in state court which would toll the statutory period. *See Wilcox v. Fla. Dept. of Corrections*, 158 F.3d 1209, 1211 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).

Clinton did not submit his properly filed amended rule 3.850 motion for postconviction relief in the state trial court until **May 23, 2003**, approximately nine months after the limitations period had already expired. *See Tinker v. Moore*, 255 F.3d 1331 (11th Cir. 2001), where the Eleventh Circuit, quoting *Webster v. Moore*, 199  F.3d 1256, 1259 (11th Cir. 2000), held that a state court petition that is filed following the expiration of the federal limitations period "cannot toll that period because there is no period remaining to be tolled." *Id.* at 1333.

Clinton's first rule 3.850 motion, dated October 8, 2001, was not properly filed for tolling purposes because it did not meet Florida's filing requirement that a rule 3.850 motion contain a proper oath. This first rule 3.850 motion, dismissed for Clinton's failure to comply with the pleading requirement that the motion contain a proper oath,  was improperly filed and thus did not toll the limitations period. *See Section 2244(d)(2); Artuz v. Bennett,* 531 U.S. 4 (2000); *Hurley v. Moore*, 233 F.3d 1295 (11th Cir. 2000)(state postconviction motion which did not contain written oath required by state criminal procedural rule was not properly filed and could not toll one-year limitations period for federal habeas petitions).

Accordingly, Clinton's present petition is untimely. Alternatively, even if the petition is considered timely, Clinton is not entitled to relief from this Court because he fails to meet the

requirements of 28 U.S.C. § 2254(d) and (e).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## DISCUSSION

### Ground One

Clinton alleges he was deprived of his right to due process when the state court

6

restricted defense counsel's cross-examination of a key State witness on matters bearing on the accuracy of his identification. Specifically, defense counsel wanted to introduce testimony from eyewitness Timothy Lamm as to a remark made by another witness, Darren Rutledge, Lamm's brother-in-law, to the effect that all black people look alike and are hard to tell apart. (Vol. 2: T 71-72).

The trial court properly prevented the defense from questioning Timothy Lamm regarding statements allegedly made between Lamm and Rutledge that blacks look alike and they had difficulty telling them apart. Such comments were irrelevant, and the defense was permitted to determine possible inconsistencies in the eyewitness identification. Moreover, the alleged statements made by Rutledge were inadmissible hearsay.

The Supreme Court has held that a trial court retains wide discretion to impose reasonable limits on cross-examination of witnesses "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In this case, the trial court's limitation of cross-examination as to the irrelevant and inadmissible hearsay remarks was a proper and reasonable exercise of the court's discretion. Clinton cannot demonstrate that the trial court's ruling was contrary to, or an unreasonable application of Supreme Court precedent.

Ground one does not warrant habeas corpus relief.


Ground Two

Clinton asserts he was deprived of his right to due process when the state trial court

7

allowed an improper peremptory challenge by the State, resulting in disenfranchisement of a juror based on unproven allegations. Specifically, Clinton takes issue with the State's exercise of a peremptory challenge on prospective juror Riggins for the stated race-neutral reason that Ms. Riggins was not truthful in her answers regarding her past convictions. A review of the voir dire proceeding reflects when asked by the trial court about any prior involvement in court proceedings, Ms. Riggins said she was a defendant in this same courthouse in 1990. (Vol. 4: T 264). She added that it was an assault case, and she received two years probation as a result of a no contest plea. (Vol. 4: T 265). During the bench conference, the State attempted to strike Ms. Riggins for cause, stating:

> The reason why we would strike her for cause is when we asked her about prior charges, she simply stated to us that she had an assault. Upon reviewing her record, she actually had a battery on a law enforcement officer, resisting arrest with violence, and I think four other charges. Battery on a fire fighter, it was a four-count information.
>
> The reason why I would strike her for cause is she wasn't truthful for our questions.

(Vol. 5: T 366-367).

The trial court denied the challenge for cause at that time, believing that the prospective juror was trying to explain as best she could. The court allowed the State an opportunity, if it desired, to bring her in separately. (Vol. 5: T 367). Later, when the parties were exercising peremptory challenges, the State struck Ms. Riggins "for the fact that she -- the previous stated reasons, however, it would now just be a peremptory and the fact that she was a defendant in this criminal justice system and she was prosecuted by our office." (Vol. 5: T 370-371). Defense counsel objected, noting that Ms. Riggins was the only African-American on the panel and Clinton is African- American. The state trial court noted the defense objection, but allowed the

strike, finding "there is sufficient independent grounds as stated by the State previous." (Vol. 5: T 371). Defense counsel protested further, asking the court to voir dire Ms. Riggins further about her contacts with the system to determine her response. The prosecutor disagreed, stating, "Your Honor, I don't think that's necessary. All we need to do is present to the court a race neutral reason for a preemptory [sic] strike, and we have presented that. Regardless of her being a victim is irrelevant. We have provided the Court with the fact that she was a defendant in our criminal justice system, prosecuted by our office. Race has nothing to do with the reason." The court responded, "I think there is sufficient race neutral reasons for the preemptory [sic]. The objection is noted." (Vol. 5: T 371-372).

In *Batson v. Kentucky*, 476 U.S. 79, 88-89 (1986), the Supreme Court reaffirmed the principle that the Equal Protection Clause forbids the prosecutor from challenging potential jurors solely on the basis of race. At the stage at which the prosecutor must provide a race-neutral reason, *Batson* requires both a clear and reasonably specific explanation of the prosecutor's legitimate reasons for exercising a challenge. *Batson*, 476 U.S. at 98 n. 20. However, a legitimate reason is not one that makes sense, "but a reason that does not deny equal protection." *Purkett v. Elem*, 514 U.S. 765, 769, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995). Moreover, "unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). In this case, the trial court determined that the prosecutor stated a race neutral reason for striking the prospective juror, and that the reasons were genuine. The ruling was affirmed on appeal. Clinton has not shown that the decision was objectively unreasonable, or was contrary to or an unreasonable application of, Supreme Court precedent.

Ground two does not warrant federal habeas corpus relief.

9

Ground Three

Clinton contends his trial counsel was ineffective for failing to strike or attempt to strike venire person Beverly Rozmus from the panel based on her "unequivocal response to a question about whether she could remain fair and impartial if the trial was lengthy." Specifically, Ms. Rozmus said in regard to the problems she might experience in sitting at a lengthy trial, "I think it would be very stressful, and I have stress related problems." (Vol. 4: T 305). She also said it was likely that she would not be able to sit and listen to the trial and deliberate all the way to the end without the stress problem entering in. (Vol. 4: 305-306). However, Ms. Rozmus later told defense counsel she presumed Mr. Clinton was innocent until the evidence had proven otherwise, and that she was comfortable with that concept. (Vol. 5: T 364).

In order to show a violation of the Sixth Amendment right to counsel, Clinton must satisfy the two-pronged test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and such prejudiced him, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687-88. *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). This judicial scrutiny is "highly deferential." *Id.* A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689-90; see also *Bell v. Cone, supra*, 535 U.S. at 698.

10

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (*en banc*), *cert. denied*, 536 U.S. 964 (2002) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). The cases in which habeas petitioners can properly prevail on a claim of ineffective assistance of counsel are few and far between. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one; a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Id.* at 1314 n.15.

Thus, as *Chandler* makes clear, the presumption afforded counsel's performance "is not. . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial–for example, what witnesses he presented or did not present – were acts that some reasonable lawyer might do." *Id.*

Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Chandler*, at 1317. Absolute rules would interfere with counsel's independence – which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions. Id. The reasonableness of counsel's performance is determined through deferential

11

review of all of the circumstances from the perspective of counsel at the time of the alleged errors. *Strickland,* 466 U.S. at 689. Every effort should be made to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time." *Id.*

In applying the AEDPA standard to ineffective assistance of counsel claims, the federal court's focus is on whether the state decision can be viewed as objectively reasonable. See *Wellington v. Moore*, 314 F.3d 1256, 1261 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." (internal quotation omitted)), *cert. denied*, 535 U.S. 1107 (2002). The Supreme Court reiterated the highly deferential standard for evaluating state-court rulings in *Woodford v. Visciotti*, 537 U.S. 19 (2002):

> Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly. *See Bell v. Cone*, 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams, supra*, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. An "unreasonable application of federal law is different from an incorrect application of federal law."

*Id.*, 537 U.S. at 24-25 (reversing grant of habeas relief to a state prisoner under death sentence, finding the circuit court ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d) (citation omitted)).

The state postconviction court held an evidentiary hearing on this claim. Clinton testified at the hearing that juror Rozmus had stress related problems, and his counsel did not object. (Exhibit 12: EH 169). On cross-examination, Clinton indicated he participated with his attorney during the jury selection. He could not recall whether he heard the juror make the comment. Trial counsel indicated he was pleased with the jury, so Clinton agreed to accept the panel. (EH

171).

James Armington, Clinton's trial counsel, testified at the hearing that juror Rozmus indicated she presumed the defendant was innocent. Counsel had one challenge left at that point and possibly chose to strike another juror who had a law enforcement officer in the family. (EH 179-180). Counsel's choices for the jury panel were strategic as to what jurors would be best for Clinton. Counsel testified he definitely did not get a negative feeling from Ms. Rozmus. (EH 181-182). The state trial court judge made the following findings in the final order denying relief:

> The Defendant alleges that trial counsel rendered ineffective assistance by failing to move to strike Beverly Rozmus from the jury in this matter. The Defendant does not allege that the error was specifically the failure to attempt to strike Ms. Rozmus for cause or alternatively, failing to utilize a peremptory strike to remove her from the jury. The exchange that is the basis for the Defendant's allegation took place during the state attorney's voir dire. The prosecutor asked a juror who was self employed a question about the possible impact his sitting on the jury might have on his business. [See Exhibit B, portion of trial transcript, pages 304-306.] The specific question was, "Okay. What if you can't be there tomorrow?" The juror, Edward Goggin, responded that his business would not make any money. The state attorney then asked, "How is it going to effect (sic) your ability to sit as a jury?" Mr. Goggin responded that he thought he might be thinking about work. Shortly after this exchange the prosecutor made the following statement:

> > I know it's difficult to say how you are going to feel because it's in the future. But these are things that are really important. We have to know how this is going to effect (sic) you as we go along. The last thing that either side, the Defense or the State, wants, is somebody who is going to be back there saying, you know, this is taking too much of my time. I'm really aggravated, either at the State or at the Defense, for making those objections and making us take so long. Is there anybody - I mean, be honest?"

> The question was posed to the panel as a whole. The juror in question in this claim, Ms. Rozmus, was the first person to respond to this statement, stating, "I think it would be very stressful, and I have stress related problems." The state attorney followed up and asked, "So you think that you would not be able to sit and listen to the trial and all the evidence and deliberate all the way to the end

without that entering in?" Ms. Rozmus initially indicated that it was a possibility and then after further inquiry indicated that she thought it was likely. [See Exhibit B, page 306.]

Neither side questioned Ms. Rozmus on this particular issue any further. However, defense counsel did ask Ms. Rozmus about the presumption of innocence during his voir dire examination. She indicated that she presumed the Defendant to be innocent until the state proved otherwise and also that she was comfortable with that burden being placed on the state. [See Exhibit C, trial transcript, page 364.]

## ANALYSIS

This claim must be analyzed in the context of both peremptory and cause challenges. The failure to trial counsel to challenge a juror for cause is cognizable under rule 3.850. *Davis v. State*, 29 Fla. L. Weekly D2374 (Fla. 2d DCA 2004), *Allen v. State*, 875 So. 2d 734, 735 (Fla. 2d DCA 2004). However, it is not clear that failure to utilize a peremptory challenge is remediable under the rule. A peremptory challenge is by definition a function of discretion, to be exercised by the parties in a trial. Ineffective assistance of counsel claims are those that go to the fundamental fairness of a trial, requiring a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Failure to utilize a peremptory challenge does not rise to the level contemplated by Strickland and to the extent the Defendant alleges ineffective assistance in this context the motion is denied. Without reaching this analysis on whether peremptory strikes are subject to Rule 3.850 the Defendant's motion would nevertheless be denied. The state attorney's argument that trial counsel made strategic decision to avoid Ms. Reese being seated on the jury is well taken in that context.

The allegation that trial counsel rendered ineffective assistance by failing to seek a cause challenge against Ms. Rozmus requires different analysis. The requirement that a defendant demonstrate prejudice as articulated in *Strickland* mandates that relief based on an attorney's deficient performance with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the record, where a biased juror actually served on the jury. *Jenkins v. State*, 824 So. 2d 977 (Fla. 4th DCA 2002). *See also Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) (holding that where claim of ineffective assistance is grounded in claim that counsel failed to strike biased juror, defendant must show actual bias). The nature of that bias "should be patent from the face of the record," and only in those cases where it is so clear can a defendant make the requisite showing of prejudice. *Jenkins* at 982.

Consideration of whether Ms. Rozmus was biased in this context requires a determination of whether an objection to her qualifications could be waived by

failing to make a timely objection, the error is not a fundamental one and postconviction relief is inappropriate. *Id.* In this case, nothing in Ms. Rozmus' responses indicate bias toward the Defendant. The exchange in question took place during the state attorney's voir dire and indicated potential frustration if she were forced to participate in a lengthy trial. She did not indicate that she would hold it against the Defendant in any way. It is important to note that trial counsel testified that his notes from jury selection indicate that he did not get a negative reaction from Ms. Rozmus. The court accordingly finds that the Defendant has failed to demonstrate the necessary prejudice under *Strickland* and *Jenkins* and his motion is therefore denied.

(Order Denying Motion for Postconviction Relief at pp. 2-4).

Clinton's claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror. To maintain a claim that a biased juror prejudiced him, however, Clinton must show that the juror was actually biased against him. *See Smith v. Phillips*, 455 U.S. 209, 215 (1981). Clinton has never shown that juror Rozmus was actually biased, and thus has failed to show that the juror's presence on the jury prejudiced him.

Ground three does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Clinton's petition for writ of habeas corpus is denied, with prejudice. The Clerk is directed to enter judgment against Clinton and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's

15

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 18, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Honore Clinton